## Jared D. Sessions & another *vs.* Western Railroad Corporation.

If upon the arrival at the place of their destination of goods delivered to a railroad corporation for transportation, the agent of the owner of the goods, in the presence of the station master of the corporation, removes a portion of them from the car in which they have been transported, saying that he will come again for the rest, and some of the rest are afterwards lost from the car or from the freight-house of the corporation, it is a question for the jury, in an action by the owner of the goods against the corporation for the loss, whether the delivery to the plaintiff's agent of the portion of the goods taken by him from the car was intended by the parties for a delivery of the whole or only of the portion taken.

The liability of a railroad corporation as common carriers for goods delivered to them for transportation ceases when the goods have been taken from the car in which they have been transported to the place of destination, and stored in a freight-house of the corporation; and the corporation are thereafter liable only as warehousemen.

In an action against a railroad corporation to recover the value of goods received by them for transportation and lost, if there is any question whether the loss occurred while the liability of the defendants was that of common carriers or while it was that of warehousemen only, this question must be determined by the jury; and if the jury, on returning a verdict, in answer to an inquiry of the presiding judge, state that this question was not considered, a new trial must be ordered.

It is no part of the duty of a warehouseman to make inquiry for, or go in pursuit of, property intrusted to his keeping, after he has once ceased to have possession of it.

Sessions & another *v.* Western Railroad Corporation.

MERRICK, J.  In this action the plaintiffs seek to recover the value of a roll of leather lost while in the custody of the defendants.  The declaration contains one count in which they are alleged to be liable for the loss as common carriers, and other counts in which they are charged with the liability in the character of warehousemen.

It appeared upon the trial that twenty three rolls of leather belonging to the plaintiffs were delivered to the defendants at Springfield, to be transported for hire thence to Brookfield ; that the leather was carried to the latter place on the same day on which it was received; and that the car containing it, soon after the arrival of the train there, was run out upon a side track opposite the station.  While the car was standing in that situation, the authorized agent of the plaintiffs went to it with the station agent of the defendants, and took and carried away thirteen of the twenty three rolls which were found in it, saying he would take the remaining ten which he found and left there when he next came to the station.  In the afternoon of the same day, the defendants' station agent took all the rolls of leather which he at that time found in the car, and, without counting them, carried them into the freight-house.  It was at a subsequent time discovered that one of the ten rolls which were left in the car when the plaintiffs' agent took away the thirteen had been lost.  It has never since been received by the plaintiffs, and they now claim that the defendants are responsible to them for its value.

The defendants contended that the taking by the agent of the plaintiffs of the thirteen rolls was in legal effect a delivery of the whole parcel, and that all those which were left in the car remained there solely at the plaintiffs' risk, and without further responsibility on their part on account of them.  The court properly left it to the jury to determine, upon all the evidence in the case, as a question of fact, whether the taking of the thirteen rolls was intended and understood by the parties as a delivery of the whole or only of the part taken ; and instructed them that if there was then a delivery of the whole, that terminated the liability of the defendants.  It is apparent from the verdict returned,

which was for the plaintiffs, that the jury found that the whole was not delivered, but that those rolls only were delivered which were taken and carried away by the plaintiffs' agent. Of the ten rolls which remained, nine were subsequently received by the plaintiffs, and no question arises in respect to them.

In this position of the case, it becomes material and essential to determine whether the tenth or lost roll was removed by the defendants' agent from the car, and deposited in their freight or warehouse with the other nine, or was lost before there was any removal from the car of the leather which was left there by the plaintiffs' agent. It was the duty of the defendants, immediately upon the arrival of the property at its place of destination, to deliver it to the plaintiffs, or deposit it for them in their freight or warehouse. Such a deposit constitutes a constructive delivery; and if there was such a constructive delivery of this tenth roll, their responsibility as common carriers in relation to it was terminated, and their liability as warehousemen immediately thereupon commenced. *Norway Plains Co.* v. *Boston & Maine Railroad,* 1 Gray, 263. If the loss occurred during the transportation, that is to say, before there had been a constructive delivery, they were liable for the value of the property absolutely upon their failure to deliver it on demand; but if it occurred after the leather had been deposited in their freight-house, and thus constructively delivered, they were not liable at all, if they used ordinary care for its safety and preservation. Thus, as their liability in different circumstances depended upon different rules and principles, and as they could not be liable in both capacities, it became indispensably necessary, before they could be charged with its value, to ascertain and determine in what relation they stood to the property at the time when the loss occurred.

Applying these principles to the fact disclosed in the answer of the jury to the inquiry proposed to them by the court when their verdict was returned, it is manifest that there has been a mistrial. The question propounded to them was, " whether they found that the leather was lost from the car, or after it was deposited in the warehouse;" to which the foreman replied, that

"that question was not discussed." This is equivalent to saying that they did not consider or determine the question at all; their answer will admit of no other meaning or signification. And if they did not determine that question, they could not rightfully have found a verdict for the plaintiffs. To find that the defendants were liable as common carriers, they must first have found that the loss occurred from the car, that is, during the transportation and before there had been any constructive delivery; to find that they were liable as warehousemen, they must have found that the loss happened after the transportation had ceased and the goods had been constructively delivered by an actual deposit in the warehouse. But it appears from their own answer that they found neither of these facts; they did not even consider the question upon the determination of which the rights of the parties depended. It is possible, perhaps not improbable, that the unanimity required of the jury as an essential prerequisite to the rendition of a verdict was secured by a conviction in the minds of a part of the jury that the loss occurred before the liability of the defendants as common carriers ceased, and by an equal conviction in the minds of the other part that the loss occurred after the constructive delivery, in consequence of the failure to exercise due care of the property after it came into the freight-house. But, however this may have been, it is sufficient to know, in order to perceive that there has been a mistrial, that, through some kind of misapprehension, the jury failed to consider and determine a question directly involved in the issue, and upon the answer to which the rights of the parties necessarily depended.

The instructions given to the jury, in which it was stated as a rule or principle of law that the ordinary care and diligence required of warehousemen does not necessarily cease the moment the property is lost from their warehouse, but that they are bound to exercise a certain degree of reasonable care after the occurrence of the loss, cannot be sustained. The obligation of warehousemen to exercise ordinary care for the protection and safety of goods committed to their custody depends upon and is coextensive with actual and continued possession.

If they lose that possession through any omission of the duty thus attaching to them in that relation, they are liable for all the consequences that ensue from it. On the other hand, ·if without fault on their part the property is taken from their possession, or lost by means for which they are not responsible, they are not required to go in pursuit of it, or to incur any expense of time, labor or money in endeavoring to .discover or regain it.

For the purpose of illustrating the general principle of law laid down in the instructions, the learned chief justice of the superior court told the jury that " if the warehouseman should see or know of the property of one depositor being through mistake or otherwise carried off by another, it would be his duty to interfere to prevent it ; or if he had as bailee in his possession the horse of another, and should see the animal straying from the proper inclosure, it would be his duty to take means to return the animal to its proper place." In such instances the obligation and duty of the warehouseman would undoubtedly continue in force ; for in those cases the property cannot be said to be lost; nor can it be considered as abstracted wholly from the custody of the keeper, so long as he sees and knows where it is, and has the means of still asserting and maintaining his right of possession. But when it has gone beyond his reach, and he is unable to exercise any control over it, he has then already either become absolutely responsible for its value in consequence of the omission of that care which he ought to have ·exerted, or has been wholly exonerated because the loss has not been caused or occasioned by any fault or failure of duty ·which can be imputed to him.            *Exceptions sustained.*

*F. H. Dewey*, for the defendants, cited *Schmidt* v. *Blood,* 9 ·Wend. 268; *Foote* v. *Storrs,* 2 Barb. 328 ; *Garside* v. *Trent & Mersey Navigation,* 4 T. R. 581 ; *Cailiff* v. *Danvers,* Peake R. 114 ; *Foster* v. *Essex Bank,* 17 Mass. 479 ; *Lichtenhein* v. *Boston & Providence Railroad,* 11 Cush. 74 ; *Thomas* v. *Boston & Providence Railroad,* 10 Met. 472; *Shapleigh* v. *Wentworth,* 13 Met. 358 ; *Roberts* v. *Rockbottom Co.* 7 Met. 49.

*P. E. Aldrich,* (*P. C. Bacon* with him,) for the plaintiffs, cited

*Shurtleff* v. *Williams*, 19 Pick. 209; *Farmers & Mechanics' Bank* v. *Champlain Transportation*, 23 Verm. 209; Redfield on Railways, 250, note 3; *Lichtenhein* v. *Boston & Providence Railroad*, 11 Cush. 70; *Thomas* v. *Boston & Providence Railroad*, 10 Met. 472; *Kimball* v. *Western Railroad*, 6 Gray, 542.